*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY T. MASHNI REVOCABLE LIVING
TRUST, by MARY MASHNI, Trustee,

UNPUBLISHED
January 26, 2023

Plaintiff-Appellee/Cross-Appellant,

v

No. 358017
Wayne Circuit Court
LC No. 20-015375-CB

ESTATE OF BOULOS N. MASHNI, by ROUBA
HANNA AL-ARAJ, Personal Representative,

Defendant-Appellant/Cross-Appellee.

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

Plaintiff Mary Mashni, as trustee of the Mary T. Mashni Revocable Living Trust, brought this action for breach of contract and unjust enrichment against her son, defendant Boulos N. Mashni, seeking recovery for a series of loans that she and her husband allegedly made to Boulos between 2003 and 2013 that were not repaid. In lieu of filing an answer, Boulos moved for summary disposition under MCR 2.116(C)(7), alleging that plaintiff's claims were barred by the statute of limitations and the statute of frauds. The trial court denied Boulos's motion. After Boulos filed an interlocutory application for leave to appeal the trial court's order, he died while the application was still pending. This Court thereafter granted the application and substituted Rouba Hanna Al-Araj, the personal representative of Boulos's estate, as defendant-appellant.[1] *Mary T Mashni Revocable Living Trust v Estate of Boulos N Mashni*, unpublished order of the Court of Appeals, entered November 29, 2021 (Docket No. 358017). For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

---

[1] For clarity, this opinion will refer to the original defendant by his first name, Boulos.

## I. FACTS AND PROCEEDINGS

This action involves a series of alleged loans that Mary Mashni and Naim Mashni made to their son, Boulos Mashni, all pursuant to oral agreements.[2]  First, plaintiff alleged that in 2003, she and Naim transferred to Boulos the assets of two corporate entities—one that owned and operated a gas station and one that owned the gas station land.  According to plaintiff, the business and real estate had a combined value of $2,700,000, and Boulos agreed to repay them $1,800,000 in monthly installments of $10,000 each, beginning when he had the financial wherewithal to repay the debt.  We will refer to this alleged loan as the "gas station loan."  Second, plaintiff alleged that in 2006, she and Naim obtained a 15-year, $200,000 home equity loan and, in turn, gave the loan proceeds to Boulos pursuant to an oral loan agreement whereby he agreed to repay the loan by making plaintiff and Naim's monthly mortgage payments until the debt was satisfied.  We will refer to this second loan as the "home equity loan."  Third, plaintiff alleged that in 2012, she loaned Boulos $33,000, which he promised to repay, but never did.  We will refer to this third loan as the "$33,000 loan."  Fourth, plaintiff alleged that Boulos, who held a power of attorney for plaintiff and Naim, borrowed $254,000 from plaintiff's and Naim's bank accounts between 2006 and 2007, which he promised to repay, but never did.  We will refer to this fourth series of loans as the "bank account loans."  Plaintiff alleged that Boulos made two monthly payments toward the home equity loan shortly after that loan agreement was made, but he did not make any additional payments, and he did not pay back any of the other loans.  Plaintiff alleged that she demanded repayment of all of the loans in January 2017, but Boulos did not pay back any of the loans.

On November 24, 2020, plaintiff brought this action against Boulos for repayment of the four loans.  She asserted claims for breach of contract and unjust enrichment.  She also asserted a claim for equitable estoppel, alleging that Boulos's pleas of financial hardship over the years and reassurances that he would repay all the loans estopped him from asserting defenses based on the statute of limitations and the statute of frauds.  In lieu of filing an answer, Boulos moved for summary disposition under MCR 2.116(C)(7), arguing that plaintiff's claims were barred by the statute of limitations and the statute of frauds.  Boulos also requested sanctions under MCL 600.2591, alleging that plaintiff's claims were frivolous.  Plaintiff denied that her claims were untimely or barred by the statute of frauds, but further argued that to the extent that the statute of limitations or the statute of frauds applied, Boulos should be equitably estopped from asserting those defenses.  The trial court ruled that Boulos failed to establish that any of the claims were barred by the statute of limitations or the statute of frauds.  It further held that, to the extent that the statute of limitations or the statute of frauds might later be found to apply, development of a factual record was necessary to resolve plaintiff's claim that Boulos should be equitably estopped from asserting those defenses.  Accordingly, the trial court denied Boulos's motion for summary disposition.  This Court granted defendant's application for leave to appeal the trial court's order.

---

[2] Plaintiff is trustee of the Mary T. Mashni Revocable Living Trust.  Although the alleged loans were made by both plaintiff and Naim, plaintiff alleges that they assigned their interests in the loans to her trust.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Boulos moved for summary disposition under MCR 2.116(C)(7), which permits a court to grant summary disposition when a claim is barred by the statute of limitations or the statute of frauds. A motion under Subrule (C)(7) may be supported by affidavits, pleadings, depositions, admissions, and other documentary evidence. MCR 2.116(G)(5). Unlike a motion brought under Subrule (C)(10), however, "a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(7),

> this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (footnotes omitted).]

In this case, Boulos did not submit any affidavit or other documentary evidence in support of his motion. Plaintiff, however, submitted her own affidavit, which the trial court was permitted to consider in determining whether any questions of fact existed that could provide a basis for recovery.

## III. STATUTE OF LIMITATIONS

Defendant argues that all of plaintiff's claims are barred by the statute of limitations. Defendant does not dispute that plaintiff's claims are subject to the six-year limitations period that applies to actions for breach of contract. MCL 600.5807(9). Defendant argues, however, that all of plaintiff's claims accrued more than six years before plaintiff filed this action on November 24, 2020.

"Generally, the burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute." *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). "Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues." MCL 600.5827. Unless otherwise provided by statute, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damages results." *Id.* "[T]his Court has generally held that a cause of action for breach of contract accrues when the breach occurs, i.e., when the promisor fails to perform under the contract." *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 245-246; 673 NW2d 805 (2003).

As the trial court observed, resolution of the statute-of-limitations issue depends on when plaintiff's claims accrued. In the context of this case, accrual depended on when Boulos first became obligated to repay the loans and failed to do so. According to plaintiff's complaint, and plaintiff's affidavit, there was no specified repayment date for at least the gas station loan and the $33,000 loan. Plaintiff alleged in her complaint that Boulos was required to begin repaying the gas station loan "at a future date after [Boulos] had the financial wherewithal to pay the monthly payments of $10,000," and she averred in her affidavit that Boulos "promised that he would pay $10,000 per month for 15 years after he developed the business." Plaintiff did not allege a repayment date for the $33,000 loan in her complaint, but she averred in her affidavit that this loan was payable on demand, and that she demanded payment in January 2017. Plaintiff alleged in both her complaint and her affidavit that the $254,000 bank account loans were payable on demand, and that she demanded payment in January 2017. Regarding the home equity loan for $200,000, plaintiff alleged in her complaint both that Boulos agreed to "make[] the monthly refinancing payments until the loan was paid" and "promis[ed] to make the monthly payments over a period of fifteen years equal to the mortgage payment as increased by the loan." In her affidavit, however, she also averred that this loan was payable on demand, and that she demanded repayment in January 2017. In his motion for summary disposition, Boulos generally emphasized that each of the alleged loan agreements were made much more than six years before plaintiff filed her complaint and generally suggested that any breach would have occurred almost immediately. He acknowledged plaintiff's demand in January 2017, but argued that this demand could not revive a contract claim that had accrued more than six years earlier. Significantly, Boulos did not submit any affidavit or other evidence to factually support any specific date for when any repayment obligation may have arisen and was not satisfied.

Considering the nature of the alleged loan agreements and the submitted evidence, it is necessary to determine (1) when does a claim accrue for payment of an on-demand loan; (2) when does a claim accrue for payment of a loan payable when a debtor is financially able to repay the loan; and (3) when does a claim accrue for payment of a loan that is repayable in installments. Further, because plaintiff asserted equitable estoppel in her complaint, it is also necessary to consider whether the doctrine of equitable estoppel can save any claim that otherwise is untimely.

It is generally accepted that an oral loan with no terms expressing a time for repayment is due upon demand, and that a claim for a loan payable on demand accrues either when a demand is made, or a reasonable amount of time has elapsed without a demand. See *Jackson v Estate of Green*, 484 Mich 209, 215 (YOUNG, J., and CORRIGAN J., concurring), 233 (CAVANAGH, J., and M. KELLY, J., concurring); 771 NW2d 675 (2009). Further, we agree with Justice Young's statement in *Jackson*, that "[d]etermining what constitutes a reasonable amount of time to request repayment of a loan is necessarily a factual question properly decided by the jury." *Id*. at 217.

Michigan law is clear that, with respect to an oral contract that requires the debtor to repay a loan when the debtor is able to pay, the claim accrues when the debtor acquires the ability to repay the loan. In *Dewey v Tabor*, 226 Mich App 189, 190; 572 NW2d 715 (1997), the plaintiff alleged that he orally agreed to lend $8,000 to the defendants to help them start a business. The defendants agreed to repay the loan, with interest, when "they made some money" and "were able to pay it." *Id*. (quotation marks omitted). The defendants assured the plaintiff several times in the following four years that they would soon be able to repay him, but payment never came. *Id*. at 191-192. The plaintiff filed suit for breach of contract and unjust enrichment seven years after

he made the loan. *Id*. at 192. This Court stated that it was required to initially determine "when the period of limitation begins to run against a contract such as the one in the present case involving a promise to pay 'when able.' " *Id*. at 193. This Court recognized that, under the majority rule, "the promise to pay when able is a conditional promise, so that a cause of action to enforce the promise accrues, and the relevant period of limitations begins to run, when the promisor's ability to pay arises." *Id*. at 194. Under the minority rule, "the promise to pay when able or when convenient is considered to be too indefinite to constitute a true conditional promise, and, therefore, it is regarded as an absolute promise to pay within a reasonable time." *Id*. "Thus, the cause of action accrues, and the period of limitation begins to run, within a reasonable time after the promise has been made without reference to the actual ability to pay." *Id*. In *Dewey*, this Court adopted the majority rule, concluding that it was "better reasoned and more in accord with the intent of the parties in these types of situations, which commonly involve loans or transactions among friends and relatives." *Id*. at 195. This Court concluded that the trial court prematurely granted summary disposition on grounds of untimeliness because the record evidence did not yet establish when the defendants had the ability to repay the loan, which was when the claim accrued. *Id*. at 195-196.

On the basis of these authorities, we conclude that with respect to any loans that were payable on demand, plaintiff's claims are not untimely if they were brought within the six-year period after she initially demanded payment, provided that any delay in making the demand was not unreasonable. With respect to any loans that were payable when Boulos became financially able to repay, because any claim for repayment would not have accrued until Boulos had the financial ability to repay the loans, plaintiff's claims would not be untimely if she can establish that she filed this action within six years after Boulos became financially able to repay the loans. In the context of summary disposition, the trial court was required to review the pleadings and any supporting evidence submitted by the parties in a light most favorable to plaintiff, the nonmoving party, to determine whether undisputed facts demonstrated that plaintiff's claims were barred by the statute of limitations. *Kincaid*, 300 Mich at 522-523. Notably, Boulos did not submit any documentary evidence in support of his motion. In particular, he did not submit any evidence indicating when plaintiff demanded repayment of any loans, or indicating whether and when he had the financial ability to repay any of the loans alleged in plaintiff's complaint. Plaintiff, however, submitted evidence in the form of her own affidavit that described the terms and circumstances of the various loans, and a copy of a written demand for repayment of the various loans that she claimed to have given to Boulos in January 2017. Thus, the trial court was required to review the pleadings and the evidence submitted by plaintiff, and it could properly grant summary disposition only if there was no genuine issue of fact that plaintiff's claims were time-barred as a matter of law.

Regarding the gas station loan, plaintiff's complaint alleged that Boulos was required to begin repaying this loan "at a future date after [Boulos] had the financial wherewithal to pay the monthly payments of $10,000," and plaintiff averred in her affidavit that Boulos "promised that he would pay $10,000 per month for 15 years after he developed the business." Preliminarily, plaintiff's complaint and affidavit seem inconsistent in identifying the event that would have triggered Boulos's obligation to begin repaying the gas station loan. The complaint indicates that the repayment obligation would have been triggered when Boulos acquired the financial wherewithal to pay monthly payments of $10,000, whereas plaintiff's affidavit indicates that this obligation would have arisen after Boulos "developed the business." Despite this uncertainty over

-5-

the event that triggered Boulos's obligation to begin repaying the gas station loan, Boulos did not present any evidence showing if or when either contingency occurred. That is, he did not submit an affidavit or other documentary evidence indicating when he "developed the business" or otherwise had the financial ability to pay the $10,000 monthly payments. Plaintiff, however, alleged in her complaint that a demand for repayment of the gas station loan was made in January 2017, "when it appeared that [Boulos] then had the wherewithal to make payments." There are no allegations or evidence otherwise indicating when the gas station property was developed. Defendant argues that the gas station loan could not have allowed for deferred payments because the alleged agreement set forth a schedule of payments. According to plaintiff's complaint, however, the scheduled payments were not to begin until the occurrence of a triggering event, and Boulos did not present any evidence that the triggering event occurred more than six years before plaintiff filed her complaint.

In sum, on the basis of the allegations in the pleadings and the submitted evidence, the trial court did not err by holding that Boulos failed to establish that there was no genuine issue of fact that plaintiff's claim for the gas station loan accrued more than six years before plaintiff filed this action on November 24, 2020. Accordingly, the trial court properly denied summary disposition with respect to this claim. *Smith v Estate of Smith*, 91 Mich 7, 11-12; 51 NW 694 (1892).

According to both plaintiff's complaint and her affidavit, there was no specified repayment date for the $33,000 loan made in 2012. Therefore, this loan was payable on demand. Plaintiff did expressly allege that the bank account loans, made in 2006-2007, were payable on demand. Plaintiff alleged that she demanded payment of both of these loans in January 2017. Boulos did not present any evidence that plaintiff demanded repayment of either loan at any time before January 2017. Plaintiff filed this action within six years after demanding repayment of these loans in January 2017. Therefore, whether these claims were timely depends on whether plaintiff's delay in waiting until January 2017 to demand repayment was reasonable. Plaintiff waited only five years to demand payment of the $33,000 loan. This period of time cannot be considered unreasonable. Indeed, a period of six years to make a demand has been held to be reasonable as a matter of law because that would be equivalent to the six-year period for bringing an ordinary contract claim. See *id*. Further, Boulos did not present any evidence of any circumstances involving this loan to establish that it was unreasonable to wait until January 2017 to demand repayment of the $33,000 loan. The delay in demanding repayment of the $254,000 bank account loans, approximately 10 to 11 years, presents a closer question. As noted earlier, what constitutes a reasonable time to demand repayment of a loan is generally a question of fact for the jury. Plaintiff alleged in her complaint that she delayed demanding repayment of this loan because of Boulos's repeated assurances that he would repay all sums loaned. Boulos did not present evidence of any circumstances to show that the delay in demanding repayment of the bank account loans should be considered unreasonable. Under these circumstances, the trial court did not err by holding that Boulos failed to demonstrate that there was no genuine issue of fact that plaintiff's claims for the $33,000 loan and the bank account loans were untimely. Accordingly, the trial court properly denied summary disposition with respect to these claims.

Plaintiff's claim involving the home equity loan in 2006 is different because plaintiff's complaint does not allege that this loan was payable on demand. Rather, plaintiff alleged that she and her husband refinanced their home and obtained loan proceeds of $200,000, which they in turn loaned to Boulos in exchange for his promise to "make[] the monthly refinancing payments until

the loan was paid," which involved "promising to make the monthly payments over a period of fifteen years equal to the mortgage payment as increased by the loan." Thus, according to plaintiff's complaint, this loan was subject to a set repayment schedule, which began when the loan was made in 2006. The complaint also alleged that Boulos "failed to make any of the monthly payments with the exception of two." According to plaintiff's affidavit, Boulos "made one payment early on and ultimately stopped paying . . . ." On the basis of these allegations, Boulos would have breached the home equity loan shortly after it was made in 2006, when he stopped making the monthly payments as required by the terms of the alleged loan agreement. Thus, any claim for repayment of that loan would have accrued at that time.

Plaintiff argues that if her claim for the home equity loan accrued when Boulos first missed an installment payment, she is nonetheless permitted to sue for missed installment payments that were due within the six-year limitations period. "[W]hen an installment contract does not contain an acceleration clause, claims based upon a breach of the installment contract accrue, and the statute of limitations begins to run, as each separate installment falls due." *Sparta State Bank v Covell*, 197 Mich App 584, 587; 495 NW2d 817 (1992). Plaintiff alleged in her complaint that Boulos "promis[ed] to make the monthly payments over a period of fifteen years equal to the mortgage payment as increased by the loan[.]" Accepting this allegation as true, Boulos would have been required to repay the home equity loan in monthly installments over a 15-year period, beginning in 2006 and ending in 2021. Plaintiff's complaint was filed on November 24, 2020. Therefore, any claim for installments due before November 24, 2014, would be untimely. However, the statute of limitations does not bar recovery of installment payments due on or after November 24, 2014.[3]

Defendant argues that if the home equity loan originated as an on-demand loan or an able-to-pay loan, then his first payment triggered his obligation to make monthly payments, and a claim related to that loan would have accrued at that time. This argument conflates the nature of an on-demand or able-to-pay loan with an installment loan. In any event, plaintiff did not allege in her complaint that the home equity loan was an on-demand or an able-to-pay loan, and Boulos did not present any evidence to that effect in support of his motion for summary disposition. Rather, according to the allegations in plaintiff's complaint, the loan was repayable in installments over a 15-year period. Because Boulos did not present any evidence contradicting this allegation, the trial court was required to accept it as true when reviewing Boulos's motion. Thus, under *Sparta*

---

[3] Similarly, as explained earlier, the gas station loan also involved an agreement to repay the loan in installments, but that installment agreement was not scheduled to begin until Boulos had the financial ability to pay the $10,000 monthly payments under the terms of that loan, and Boulos failed to demonstrate that plaintiff's claim for repayment of this loan accrued more than six years before plaintiff filed her complaint on November 24, 2020. However, to the extent that the claim is later found to have accrued more than six years before the complaint was filed, plaintiff's claim for any installment payments that were due before November 20, 2014, would be time-barred, but plaintiff would not be foreclosed from seeking recovery for any installments due on or after November 14, 2014.

*State Bank*, *id*., each missed installment payment gave rise to a new cause of action, so any installments due on or after November 24, 2014, would not be barred by the statute of limitations.

Defendant also argues that if plaintiff's claim initially accrued outside the limitations period, plaintiff cannot pursue recovery of any installments that came due within the limitations period because this invokes the "continuing-wrongs doctrine," which has been disavowed. The "continuing-wrongs doctrine" holds that when a claim of wrongful conduct "is of a continuing nature, the period of limitations does not begin to run on the occurrence of the first wrongful act; rather, the period of limitations will not begin to run until the continuing wrong is abated." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 280; 769 NW2d 234 (2009). As this Court has recognized, the continuing-wrongs doctrine has been expressly abrogated in civil rights cases and cases involving nuisance and trespass. *Id*. at 285-286. Defendant cites *Blazer Foods*, 259 Mich App at 251, in which this Court declined to apply the continuing-wrongs doctrine to a claim arising from a party's failure to adequately perform contractual obligations. That case, however, did not involve installment payments. It involved a continuing-services contract, in which the defendant allegedly breached its duty to provide training and other services for the plaintiff. *Id*. at 242-243. The continuing-wrongs doctrine is not implicated in the context of an agreement that requires installment payments. In an installment context, failure to make one installment is not a continuing wrong with respect to future installments because the future installments are not yet due. Rather, the failure to pay each installment when due is an independent wrong, giving rise to a new claim as each installment falls due. *Sparta State Bank*, 197 Mich App at 587.

Defendant also argues that plaintiff's unjust-enrichment claims are barred by the statute of limitations. Our Supreme Court "has long recognized that statutes of limitation may apply by analogy to equitable claims." *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 127 n 9; 537 NW2d 596 (1995). Where an equitable claim would provide relief that is analogous to the relief available under a similar legal claim, courts generally apply the legal claim's statute of limitations to the equitable claim as well. *Id*. A claim for unjust enrichment is the equitable counterpart of a legal claim for breach of contract. *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 328; 657 NW2d 759 (2002). Therefore, the same six-year limitations period applies to plaintiff's unjust-enrichment claims. See *Huhtala v Travelers Ins Co*, 401 Mich 118, 125; 257 NW2d 640 (1977); see also MCL 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."); MCL 600.5815 ("The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought. . . .").

To prove unjust enrichment, a plaintiff must show "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang–Kelly Investment, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013). An implied contract prevents unjust enrichment but only in the absence of an "express contract covering the same subject matter." *Id*. Plaintiff's complaint alleges that the loan transactions are subject to an express contract. But to the extent that she is unable to establish an express contract and she is able to rely on an unjust-enrichment theory, her claims would be subject to the same six-year limitations period applicable to the breach-of-contract claims. Accordingly, the same statute-of-limitations analyses would apply. Thus, any claim for unjust enrichment related to the home equity loan transaction would be untimely with respect to installment payments

that were due before November 14, 2014.  But on the present record, Boulos failed to establish that any unjust-enrichment claim related to the remaining loan transactions would be time-barred, so the trial court properly denied Boulos's motion for summary disposition as to those claims.

Plaintiff argues, and alleged in her complaint, that to the extent that any of her claims are found to be untimely filed, the doctrine of equitable estoppel precluded Boulos from asserting the statute of limitations as a defense because Boulos induced plaintiff and Naim to believe that he would repay the loans without them having to resort to legal action.  Whether plaintiff can rely on the doctrine of equitable estoppel to save any claims that are found to be untimely under the statute of limitations is addressed below in Section V of this opinion.

In sum, we hold that the trial court properly denied Boulos's motion for summary disposition on the basis of the statute of limitations with respect to plaintiff's claims for the gas station loan, the $33,000 loan, and the bank accounts loan.  With respect to the home equity loan, any installments that became due on or after November 24, 2014, would not be barred by the statute of limitations, but plaintiff is time-barred from recovering any installments that were due before November 14, 2014, unless she can establish that Boulos should be equitably estopped from asserting the statute of limitations as a defense to recovery of those payments, as further discussed in Section V, *infra*.

## IV.  STATUTE OF FRAUDS

Defendant argues that the alleged loans were unenforceable under the statute of frauds.  In particular, defendant relies on MCL 566.106, MCL 566.108, and MCL 566.132(1)(a).

MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

MCL 566.108 provides:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . .

Additionally, MCL 566.132(1)(a) provides that an agreement "that, by its terms, is not to be performed within 1 year from the making of the agreement" is void unless it is "in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise . . . ."

First, defendant argues that the alleged gas station loan is unenforceable under MCL 566.106 because it involved a contract in which plaintiff transferred the gas station property to Boulos. Plaintiff argues that MCL 566.106 does not apply to this transaction because the agreement did not involve a sale or transfer of land, but rather a transfer of the corporate entity that owned the land. Defendant does not directly address this distinction, but cites *Thorbahn v Walker's Estate*, 269 Mich 586, 591; 257 NW 892 (1934), in which the Court stated that "[w]here a promise is entire and is partly within, and partly not within, the statute of frauds, the whole contract is unenforceable unless the requirements of the statute are complied with." In *Hague v De Long*, 282 Mich 330, 332-333; 276 NW 567 (1937), our Supreme Court held that a contract to transfer stock was "unquestionably" a sale of personalty not subject to the statute of frauds, even though the corporation's business assets included real estate. The Court stated that "[w]hile it may be claimed in a remote sense the stockholders own the business, nevertheless from the legal point of view all they owned and had for sale was the stock in the corporation." *Id*. at 333. According to plaintiff's complaint, Boulos agreed to pay $1,800,000 in exchange for plaintiff's and Naim's conveyances of "the entirety of their interest in the corporation owning the store and the limited liability company owning the real estate." Boulos did not submit any evidence to contradict this allegation. Because the promise that plaintiff seeks to enforce is a promise to pay funds for the transfer of the ownership interests in the corporate entities that owned the gas station business and the property on which the gas station is located, it is not within MCL 566.106 or MCL 566.108.

Defendant also argues that the alleged loan agreements were unenforceable under MCL 566.132(a) because, by their terms, they could not be performed within one year. "To determine whether an agreement comes within this section, the proper inquiry is whether the contract is capable of performance within one year of the agreement." *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 533; 473 NW2d 652 (1991). "The mere fact that the contract may or may not be performed within the year does not bring it within the statute. The rule is that if, by any possibility, it is capable of being completed within a year, it is not within the statute . . . ." *Id*. (quotation marks and citations omitted).

Plaintiff alleged in her complaint that the 2003 gas station loan for $1,800,000 was to be paid in "$10,000 monthly installment payments, until paid in full," to begin when Boulos acquired "the financial wherewithal" to pay the monthly installments. This agreement, by its terms, is not a contract "to be performed within 1 year from [its] making." Even if Boulos acquired the ability to repay the loan immediately, by the terms of the alleged agreement, it was to be performed over 180 months, or 15 years. Therefore, this loan is subject to the statute of frauds.

Similarly, with respect to the $200,000 home equity loan, plaintiff alleged that Boulos "promis[ed] to make the monthly payments over a period of fifteen years equal to the mortgage payment as increased by the loan[.]" Thus, according to the terms of this loan, it was required to be performed over a 15-year period. Therefore, it too is subject to the statute of frauds.

Plaintiff argues that the doctrine of partial performance is applicable to remove these agreements from the statute of frauds. However, in *Dumas*, the Court observed that the doctrine of part performance has been limited to transactions involving land, and that its past decisions had "declined to recognize that the part performance doctrine operates to remove a contract from the statute of frauds section concerning contracts not to be performed within a year." *Dumas, id*.

at 540-541, citing *Ordon v Johnson*, 346 Mich 38, 46; 77 NW2d 377 (1956), and *Whipple v Parker*, 29 Mich 369 (1874).

Plaintiff argues, and likewise alleged in her complaint, that to the extent that any of her claims are found to be within the statute of frauds, the doctrine of equitable estoppel should preclude Boulos from asserting the statute of frauds as a defense. Again, whether plaintiff can rely on the doctrine of equitable estoppel to save any claims that are found to be within the statute of frauds is addressed below in Section V of this opinion.

Defendant has not demonstrated that the $33,000 loan or the bank account loans are within the statute of frauds. Plaintiff expressly alleged that the bank account loans were payable on demand. Plaintiff did not allege a specific repayment date for the $33,000 loan, but a loan with no fixed time of repayment is payable on demand. *Jackson*, 484 Mich at 215, 233. Boulos did not present any evidence to contradict these allegations by plaintiff. A loan payable on demand is not, by its terms, incapable of being performed within one year. Accordingly, Boulos failed to demonstrate that the $33,000 loan and the bank account loans were within the statute of frauds.

In sum, plaintiff's claims for repayment of the gas station loan and the home equity loan are within the statute of frauds because those contracts, by their terms, were not to be performed within one year. Thus, those alleged loans are unenforceable unless plaintiff can establish that Boulos should be equitably estopped from asserting the statute of frauds as a defense to recovery of those payments, as further discussed in Section V, *infra*. However, Boulos failed to demonstrate that enforcement of the $33,000 loan and the bank account loans is precluded by the statute of frauds.

## V. EQUITABLE ESTOPPEL

Plaintiff argues, and similarly alleged in her complaint, that to the extent that any of her claims are found to be untimely filed, or within the statute of frauds, the doctrine of equitable estoppel precluded Boulos from asserting the statute of limitations or the statute of frauds as a defense.

The doctrine of equitable estoppel arises when

"(1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." [*Twp of Williamstown v Sandalwood Ranch, LLC*, 325 Mich App 541, 553; 927 NW2d 262 (2018), quoting *Howard Twp Bd of Trustees v Waldo*, 168 Mich App 565, 575; 425 NW2d 180 (1988).]

"Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999).

Under certain circumstances, equitable estoppel may apply to estop a party from asserting the statute of limitations as a defense. In *Doe v Racette*, 313 Mich App 105, 108-109; 880 NW2d 332 (2015), this Court explained:

Equitable estoppel is a judicially created "exception to the general rule which provides that statutes of limitation run without interruption[.]" *Lothian v Detroit*, 414 Mich 160, 176; 324 NW2d 9 (1982). "It is essentially a doctrine of waiver that extends the applicable period for filing a lawsuit by precluding the defendant from raising the statute of limitations as a bar." *Cincinnati Ins Co v Citizens Ins Co*, 454 Mich 263, 270; 562 NW2d 648 (1997). "[A]bsent intentional or negligent conduct designed to induce a plaintiff to refrain from bringing a timely action," Michigan courts have been "reluctant to recognize an estoppel[.]" *Id.* (emphasis omitted). Such equitable power "has traditionally been reserved for 'unusual circumstances' such as fraud or mutual mistake" because a "court's equitable power is not an unrestricted license for the court to engage in wholesale policymaking[.]" *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590; 702 NW2d 539 (2005). In the past, we have typically applied equitable estoppel in cases in which the defendant induced the plaintiff to believe the limitations period would not be enforced. See *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 204-205; 747 NW2d 811 (2008) (holding that in order to invoke the equitable estoppel doctrine, the plaintiff must generally establish that "(1) defendant's acts or representations induced plaintiff to believe that the limitations period clause would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) she was prejudiced as a result of her reliance on her belief that the clause would not be enforced").

Similarly, in an appropriate case, equitable estoppel may be used to estop a party from asserting the statute of frauds. In *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 526-527; 644 NW2d 765 (2002), this Court stated:

> In *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 365; 320 NW2d 836 (1982), our Supreme Court recognized that legal doctrines, including estoppel and promissory estoppel, "have developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the [statute of frauds]." The statute of frauds exists for the purpose of preventing fraud or the opportunity for fraud, and not as an instrumentality to be used in the aid of fraud or prevention of justice. *Farah v Nickola*, 352 Mich 513, 519; 90 NW2d 464 (1958). The doctrine of equitable estoppel has been applied to defeat the defense of the statute of frauds where a party has acted to his detriment in reliance on oral agreements or where application of the doctrine of equitable estoppel is necessitated by the facts. *Nygard v Nygard*, 156 Mich App. 94, 100; 401 NW2d 323 (1986). Estoppel questions should be presented to the jury where factual issues exist regarding whether a party is estopped from raising the statute of frauds defense against a party who reasonably and justifiably relied on an oral agreement. *Jim-Bob, Inc v Mehling*, 178 Mich App. 71, 88-89; 443 NW2d 451 (1989).

In *Nygard*, 156 Mich App at 95-96, the plaintiff and the defendant married while the plaintiff was pregnant with another man's child. The plaintiff alleged that she originally planned to place the child for adoption in a different state, but she decided to keep the child after the defendant proposed marriage and promised to support the child and treat the child as his own. *Id.* at 96. The defendant argued that the alleged agreement was unenforceable under the statute of frauds because it could

not be performed within one year. *Id*. at 99. This Court held that the defendant's promise of support was enforceable under the doctrine of equitable or promissory estoppel. *Id*. at 100.

Preliminarily, there is no merit to defendant's argument that plaintiff cannot rely on equitable estoppel because she cannot satisfy the requirements of MCL 600.5855. That statute provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

"This statutory section permits the tolling of a statutory limitations period for two years if the defendant has fraudulently concealed the existence of a claim." *Mays v Snyder*, 323 Mich App 1, 39; 916 NW2d 227 (2018), aff'd 506 Mich 157 (2020). "For the fraudulent-concealment exception to apply, a plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Id*. (quotation marks and citation omitted). In this case, plaintiff never argued that MCL 600.5855 applied to toll any statutory limitations period, and she never alleged that she was unaware of any claim or that Boulos did anything to conceal the existence of any claim. The trial court properly ruled that MCL 600.5855 has no application to this case. Further, contrary to what defendant argues, MCL 600.5855 has no bearing on whether plaintiff can invoke the doctrine of equitable estoppel.

The trial court found that the record was factually insufficient to determine whether plaintiff could properly invoke the doctrine of equitable estoppel. Plaintiff alleged in her complaint that she was entitled to invoke the doctrine of equitable estoppel because Boulos represented that he "was going through financial hardship and did not have the funds available to make payments on the debt obligations and would pay when able" and he "continuously up through early 2017 represented that he would pay all sums borrowed," which "induced [plaintiff and Naim] to believe that any applicable limitations period would not be enforced." In her affidavit, plaintiff further explained that, at Boulos's insistence, the gas station loan transaction was not reduced to writing because Boulos claimed that it would hinder his ability to borrow other money to develop his other businesses. Although Boulos argued below that plaintiff should not be permitted to rely on the doctrine of equitable estoppel to avoid the statute of limitations or the statute of frauds, Boulos filed his motion for summary disposition in lieu of filing an answer, before any discovery was conducted, and he did not submit any affidavit or other documentary evidence in support of his motion. Thus, there was no development of a factual record indicating what representations Boulos may have made, when he made them, or how often, or of any other circumstances that could either support or refute the application of equitable estoppel. Plaintiff's allegations in support of applying equitable estoppel were not so clearly deficient that they could not support application of equitable estoppel as a matter of law. Under these circumstances, the trial court did not err by holding that invocation of the doctrine of equitable estoppel remained "an open question . . . as it relates to Defendant's statute of frauds and statute of limitations defenses."

Whether plaintiff will be able to successfully assert the doctrine of equitable estoppel to prevent defendant from asserting a defense based on the statute of limitations or the statute of frauds is an issue to be resolved on remand, after development of an appropriate factual record.

## VI. SANCTIONS

Defendant argues that plaintiff's claims were frivolous, and therefore, the trial court erred by denying his request for sanctions under MCL 600.2591 and MCR 2.625. We disagree.

Generally, a trial court's finding whether an action is frivolous is reviewed for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 75-76; 903 NW2d 197 (2017) (quotation marks and citation omitted).

Preliminarily, under MCR 2.625(A)(1) and MCL 600.2591(1), only a "prevailing party" is entitled to costs and sanctions. Because the trial court denied Boulos's motion for summary disposition, he was not a prevailing party. Further, defendant has not demonstrated that plaintiff's claims were frivolous under MCL 600.2591(3)(a), which provides:

> (3) "Frivolous" means that at least 1 of the following conditions is met:
>
> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit.

Defendant does not contend that plaintiff initiated this action with a primary purpose to harass, embarrass, or injure Boulos, and for the reasons set forth in this opinion, defendant has not demonstrated that plaintiff's claims were without factual or legal merit. Accordingly, the trial court did not err by denying Boulos's motion for sanctions.

## VII. PLAINTIFF'S ISSUES ON CROSS-APPEAL

Plaintiff raises three issues on cross-appeal, none of which warrant appellate relief.

Plaintiff initially asserts that that she is entitled to have factual issues related to her claims, including whether the statute of limitations or the statute of frauds apply, decided by a jury. However, she does not contend that the trial court improperly decided any disputed factual issues. Although a court is permitted to grant summary disposition under MCR 2.116(C)(7) when undisputed facts establish that a plaintiff's claim is barred by the statute of limitations or the statute of frauds, *Kincaid*, 300 Mich App at 522, the trial court here determined that there were unresolved factual issues that precluded summary disposition in favor of Boulos. When a motion for summary disposition is based on MCR 2.116(C)(7) and a jury trial has been demanded, a party is entitled to

-14-

"a jury trial as to issues raised by the motion as to which there is a right to trial by jury." MCR 2.116(I)(3). In this case, however, the trial court did not preclude any disputed factual issues from being presented to and decided by a jury. Plaintiff has not demonstrated any error by the trial court or any grounds for appellate relief with respect to this issue.

Second, plaintiff asserts that she is entitled to amend her complaint to the extent that this Court finds that any of her claims are deficient. Whether a party should be permitted to amend a pleading is within the trial court's discretion. *Kostadinovski v Harrington*, 321 Mich App 736, 742-743; 909 NW2d 907 (2017). Leave to amend shall be freely given when justice so requires. MCR 2.118(A)(2). However, a motion to amend may be denied "for particularized reasons, including undue delay, bad faith or a dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 208; 920 NW2d 148 (2018) (quotation marks and citation omitted). "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 277; 951 NW2d 731 (2019) (quotation marks and citation omitted).

Plaintiff merely argues that she should be permitted to amend her complaint to cure any deficiencies found by this Court. However, she never moved to amend her complaint in the trial court and she does not offer any proposed amendment on appeal. Because Boulos's motion for summary disposition was not based on grounds in MCR 2.116(C)(8), (9), or (10), plaintiff is not required to be offered an opportunity to amend her complaint under MCR 2.116(I)(5). It is unclear whether plaintiff will want to amend her complaint in view of this Court's disposition of this appeal. In any event, because amendment is within the trial court's discretion, and because plaintiff does not offer any proposed amendment, if plaintiff still desires to amend her complaint on remand, she should raise the issue in an appropriate motion in the trial court.

Finally, plaintiff argues that documents submitted as Appendix D to defendant's brief on appeal should not be considered because they are not part of the lower court record. "Appeals to the Court of Appeals are heard on the original record." MCR 7.210(A). "In an appeal from a lower court, the record consists of the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced." MCR 7.210(A)(1). A party may not expand the record on appeal. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Plaintiff appears to be correct that the documents in defendant's Appendix D are not part of the lower court record. Therefore, we will not consider them. In any event, we agree that the documents are not relevant to the issues on appeal, and thus do not affect the outcome of this appeal.[4]

---

[4] We note that the documents pertain only to the gas station loan. Admittedly, they raise questions whether plaintiff will be able to factually support her claim that Boulos promised to pay $1,800,000 in exchange for the gas station business. However, Boulos's motion for summary disposition was not brought under MCR 2.116(C)(10) or allege that plaintiff was unable to factually support her claim. Rather, it sought summary disposition under MCR 2.116(C)(7) on the grounds that

## VIII.  CONCLUSION

We hold that the trial court properly denied Boulos's motion for summary disposition on the basis of the statute of limitations with respect to plaintiff's claims for the gas station loan, the $33,000 loan, and the bank accounts loan.  With respect to the home equity loan, any installments that became due on or after November 24, 2014, would not be barred by the statute of limitations, but plaintiff is time-barred from recovering any installments that were due before November 14, 2014, unless she can establish that Boulos is equitably estopped from asserting the statute of limitations as a defense to recovery of those payments.  Further, plaintiff's claims for repayment of the gas station loan and the home equity loan are within the statute of frauds, MCL 566.132(1)(a), because those alleged contracts, by their terms, were not to be performed within one year.  Thus, those alleged loans are unenforceable unless plaintiff can establish that Boulos is equitably estopped from asserting the statute of frauds as a defense to recovery of those payments.  However, Boulos failed to demonstrate that enforcement of the $33,000 loan and the bank account loans is precluded by the statute of frauds.  The trial court properly determined that the record was factually insufficient to determine whether plaintiff can invoke the doctrine of equitable estoppel.  Whether plaintiff will be able to successfully assert the doctrine of equitable estoppel to prevent defendant from asserting a defense based on the statute of limitations or the statute of frauds is an issue to be resolved on remand, after development of an appropriate factual record.  The trial court did not err by denying Boulos's motion for sanctions.  Plaintiff has not demonstrated that she is entitled to any additional appellate relief with respect to her issues on cross-appeal.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto

---

plaintiff's claims were barred by the applicable statutes of limitation and the statute of frauds.  The documents in defendant's Appendix D are not relevant to these issues.

-16-