CINCINNATI INSURANCE COMPANY v
CITIZENS INSURANCE COMPANY

Docket No. 105914. Decided May 13, 1997. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments of the Court of Appeals and the circuit court and remanded the case to the circuit court for further proceedings. Rehearing denied 456 Mich 1201.

Cincinnati Insurance Company brought a subrogation claim in the Genesee Circuit Court against Citizens Insurance Company for property damage that occurred when Citizens' insured crashed his automobile into an office insured by Cincinnati. Citizens moved for summary disposition, asserting the one-year period of limitation for bringing such suits. Cincinnati argued that Citizens was estopped from relying on the statute because it timely filed a claim for subrogation and because of the ongoing discussions concerning it. The court, Valdemar L. Washington, J., granted the defendant's motion. The Court of Appeals, MacKENZIE, P.J., and M. W. LaBEAU, J. (WHITE, J., dissenting), affirmed in an unpublished opinion per curiam (Docket No. 176801). The plaintiff seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice MALLETT, and Justices BRICKLEY, CAVANAGH, RILEY, and WEAVER, the Supreme Court *held*:

The doctrine of equitable estoppel applies.

Equitable estoppel is a judicially created exception to the general rule that statutes of limitation run without interruption. Negotiations intended to forestall bringing an action have been considered an inducement sufficient to invoke the doctrine. It would be unjust to allow Citizens to assert the statute of limitations where Cincinnati acted in apparent good faith and for the convenience of Citizens. Cincinnati was justified in relying, and did rely, on the representations of Citizens that the subrogation claim would be processed without difficulty, once all documentation was complete. The fact that Citizens did not intend to honor its representations is demonstrated by the fact that it did not honor them.

Justice BOYLE concurred with the majority opinion to the extent its analysis relies on the facts presented, which justify a unique exception to the general requirement that a plaintiff seeking to

establish equitable estoppel prove the party seeking to assert the statute of limitations intentionally or negligently misrepresented or concealed a material fact.

Reversed and remanded.

Justice KELLY took no part in the decision of this case.

*Charles F. Filipiak* for the plaintiff.

*Nill, Rockwell, Shannon & Keene, P.C.* (by *Donald G. Rockwell*), for the defendant.

PER CURIAM. This is a dispute between two insurance companies over a subrogation claim for property damage that occurred when a motorist struck a medical building. We address the question whether, on these facts, the defendant is estopped from asserting the one-year limitation period provided by statute for bringing this lawsuit. We hold that the doctrine of estoppel does apply, and we thus reverse the decision of the Court of Appeals and remand this matter to the circuit court for further proceedings.

I

On February 14, 1992, David W. Ward of Flushing crashed his vehicle into a medical building on Villa Lind Parkway in Flint. One of the offices that suffered extensive smoke damage was Family Urology, P.C., which was insured by plaintiff Cincinnati Insurance Company.

In early March 1992, less than three weeks after the incident, Cincinnati claims specialist Timothy A. Kapala contacted Mr. Ward's no-fault automobile insurer, defendant Citizens Insurance Company. In a letter to adjuster Virginia Jenkins of Citizens, Mr. Kapala explained that he was writing "to inform you of our insured's loss and a future subrogation claim." Referring to a telephone conversation with Ms. Jen-

kins the previous day, Mr. Kapala said that he would be providing additional information "[o]nce our insured's loss has been documented . . . ." The letter stated that copies had been sent to Cincinnati's home office and to a man named Tom Zimmerman.[1]

The next document of significance to this appeal is a November 1992 letter from Mr. Kapala to Thomas Griggs, a branch claims manager for Citizens. This matter had been reassigned to him when Ms. Jenkins was transferred earlier in the year. In his letter, Mr. Kapala mentioned a telephone conversation with Mr. Griggs the previous day, and noted that Family Urology already had submitted documentation of approximately $315,000 in damages. Mr. Kapala said that Cincinnati's policy limit for contents was $206,000, and that the insurer was in the process of determining both Family Urology's contents loss and its loss due to business interruption. The letter concluded:

> Once I have all the final figures and documentation, I will present it to you for consideration.

As before, the letter indicated that copies had been sent to Cincinnati's home office and to Mr. Zimmerman.

In January 1993, Mr. Kapala again contacted Mr. Griggs by letter. He noted that Family Urology's contents claim had been settled, but that the business-interruption claim was outstanding and "currently being addressed by our CPA." Mr. Kapala referred to attached documentation for Family Urology's damage claim of $315,963.18, and added:

---

[1] Mr. Kapala testified at his deposition that Mr. Zimmerman was a field claims manager for Cincinnati.

To date we have made payment in the amount of $210,400.00 minus the salvage recovery of $3,000.00 for a net payment by the Cincinnati Insurance Company in the amount of $207,400.00. As mentioned previously, we asked that you review the attached documentation and forward payment to the undersigned made payable to the Cincinnati Insurance Company. Once we have the documentation for the business interruption loss, we will forward to you for consideration and payment.

Once again, the letter indicated that copies had been sent to the home office and to Mr. Zimmerman.

Mr. Kapala testified that he called Mr. Griggs to inquire about this case a couple of weeks after sending the January letter. It was then that Mr. Griggs said that Citizens did not want to handle the claim piecemeal, i.e., to handle the contents-damage part separately from the business-interruption loss.

Mr. Kapala sent yet another letter to Mr. Griggs in May 1993, which referred to earlier correspondence and a telephone conversation the previous week. Explaining that the final figures had been received regarding the business-interruption loss, Mr. Kapala requested that a check be forwarded to Cincinnati in the amount of $231,233. As before, there was a notation that copies had been sent to Cincinnati's home office and to Mr. Zimmerman.

Another letter was sent by Mr. Kapala to Mr. Griggs in June 1993, asking when payment would be made. This was followed by a July 1993 letter that referred to a telephone conversation eleven days earlier between the two men, and asked to be advised within ten days regarding "your position as to payment of our subrogation claim." Once again, each of these let-

ters stated that copies had been sent to the home office and to Mr. Zimmerman.

In an August 24, 1993, telephone conversation, Mr. Griggs advised Mr. Kapala that Citizens was not going to pay the subrogation claim. Mr. Griggs explained in a letter six days later that Citizens was relying on MCL 500.3145(2); MSA 24.13145(2), which provides that an action for benefits due to property damage must be commenced within one year of the accident that gives rise to the claim.

Cincinnati initiated this lawsuit against Citizens in September 1993. The two-count complaint set forth a basis for the subrogation claim, and asserted that Citizens was estopped to rely on the statute of limitations because of Cincinnati's timely filing of its claim and the ongoing discussions concerning it.

Following a hearing on Citizens' subsequent motion for summary disposition, the circuit court granted the motion. Although the order does not cite a particular provision of MCR 2.116(C), we note that Citizens had requested summary disposition under subrules (7) and (10).

Cincinnati filed a claim of appeal with the Court of Appeals. In an unpublished opinion per curiam, the Court of Appeals affirmed by a vote of two to one.[2]

Cincinnati has applied to this Court for leave to appeal.

---

[2] Issued March 5, 1996 (Docket No. 176801).

II

Section 3145 of the Insurance Code of 1956 establishes the period for seeking recompense for property damage under Michigan's no-fault automobile insurance act. Under § 3145(2):

> An action for recovery of property protection insurance benefits shall not be commenced later than 1 year after the accident. [MCL 500.3145(2); MSA 24.13145(2).][3]

Cincinnati argues that although its action against Citizens in circuit court was not begun until nineteen months after the accident, the action was timely because the statutory period was tolled from the time it submitted its property damage claim in mid-January 1993 until Citizens denied the claim in late August 1993. The circuit court was unpersuaded, as was the Court of Appeals. The majority explained:

> In *United States Fidelity & Guaranty Co v Amerisure Ins Co*, 195 Mich App 1; 489 NW2d 115 (1992), this Court held that notice to a no-fault insurer of a claim for property protection benefits does not toll the running of the statutory one-year period of limitation for bringing an action for such benefits. This Court is bound under Administrative Order No. 1994-4, 445 Mich xci, to follow the *United States Fidelity* decision, and, in any event, we agree with its holding. Accordingly, we find no error in the trial court's conclusion that plaintiff's action was time-barred.

---

[3] Subsection (1) pertains to actions for recovery of personal protection insurance benefits. While enacting the same one-year period of limitation as in subsection (2), the Legislature made the triggering event under subsection (1) either the date of the accident or the date that written notice of injury was furnished to the insurer, provided the notice was given within one year of the accident.

Nor was the majority persuaded that this is an instance in which an insurer should be estopped from asserting the statute of limitations as a defense:

> Both equitable estoppel and promissory estoppel require justifiable reliance on the part of the party asserting estoppel. See, e.g., *Soltis v First of America Bank-Muskegon*, 203 Mich App 435, 444; 513 NW2d 148 (1994); *Schipani v Ford Motor Co*, 102 Mich App 606, 612-613; 302 NW2d 307 (1981). Here, as noted by the trial court, the deposition testimony of plaintiff's representative unequivocally indicated that plaintiff was acting on its own mistaken understanding of the law, and not on any representation made by defendant.[4]

Cincinnati urges this Court to reject the reasoning of the Court of Appeals majority and adopt the views of the dissenting judge. The dissent concluded that *USF&G* is distinguishable on important facts, and that this is an appropriate case for applying the judicial doctrine of tolling. As for whether Citizens should be estopped from asserting the statute of limitations, the dissent said:

> [W]hile Kapala did testify that he understood the statute to require that he submit a claim within one year, and not that he file suit within one year, he also testified that the reason he felt he had no problem with the statute of limitations at the time was because Citizens had paid the other claim arising from the same incident and because Griggs indicated that it was just a matter of providing all the documentation for review. I believe there were genuine issues of material fact as to the estoppel issue.

---

[4] Mr. Kapala testified at his deposition that he thought an insurer had one year from the date of an accident to submit a subrogation claim to another insurer, not one year to file a lawsuit.

III

In *Lothian v Detroit*, 414 Mich 160, 176; 324 NW2d 9 (1982), this Court emphasized that the doctrine of equitable estoppel is a judicially created exception to the general rule that statutes of limitation run without interruption. It is essentially a doctrine of waiver that extends the applicable period for filing a lawsuit by precluding the defendant from raising the statute of limitations as a bar.

One who seeks to invoke the doctrine generally must establish that there has been (1) a false representation or concealment of a material fact, (2) an expectation that the other party will rely on the misconduct, and (3) knowledge of the actual facts on the part of the representing or concealing party. This Court has been reluctant to recognize an estoppel absent intentional *or negligent* conduct designed to induce a plaintiff to refrain from bringing a timely action. *Id.* at 177. Negotiations intended to forestall bringing an action have been considered an inducement sufficient to invoke the doctrine, however. *Friedberg v Ins Co of North America*, 257 Mich 291; 241 NW 183 (1932).

Mr. Kapala testified by deposition that when he contacted Citizens in late January 1993 to check on the status of Cincinnati's claim, he was informed by Mr. Griggs that Citizens wanted to deal with the whole matter—contents loss and business-interruption loss—at one time. The statute of limitations was not discussed.

Mr. Griggs testified essentially the same. He recalled telling Mr. Kapala that Citizens preferred not to handle claims piecemeal. The intent was not to delay the processing of the claim, but to get the entire

matter reviewed at once, Mr. Griggs explained. He also said there was "a strong possibility" that Mr. Kapala was led to believe documents he had submitted were going to be reviewed to determine whether the loss was appropriate.

It would be unjust to allow Citizens to assert the statute of limitations where Cincinnati, through claims specialist Kapala, acted in apparent good faith *and for the convenience of Citizens* to defer his demand for payment until Family Urology's total loss had been documented. The only alternative was for Cincinnati to initiate a lawsuit within the limitation period. One of the important reasons for enacting the no-fault system, however, was to reduce automobile-accident litigation. *Lewis v DAIIE*, 426 Mich 93, 98-103; 393 NW2d 167 (1986).

Moreover, this is not an instance where Citizens was left up in the air at any point regarding the nature of Cincinnati's claim or a close approximation of the amount. Mr. Kapala promptly notified Citizens of Cincinnati's subrogation claim within three weeks of the February 14, 1992, accident. After Citizens reassigned its file to Mr. Griggs, Mr. Kapala twice advised him in writing that Family Urology had submitted documents substantiating a loss of about $315,000, on a policy limit of $206,000. Mr. Kapala requested remittance of $207,400 in his January 1993 letter. This was within the limitation period and included the expense of Family Urology's temporary move, minus the return on salvage.

Noticeably absent from the record is any indication that the manner of processing this claim by Cincinnati was unacceptable to Citizens. To the contrary, the record indicates that Cincinnati proceeded as it

did *at the request of Citizens*. Mr. Kapala's several let-
ters refer to telephone conversations with Ms. Jen-
kins and Mr. Griggs, and we have located no return
correspondence from anyone at Citizens refuting any
of Mr. Kapala's representations.

Further, Mr. Griggs testified that Ms. Jenkins' only
initial question about the claim was whether motorist
Ward's apparently intentional act of crashing into the
building would affect coverage. Mr. Griggs advised
her that it would not because Mr. Ward was the
policyholder rather than the claimant. Mr. Griggs,
who took over the file in April 1992, also testified that
he was aware of Cincinnati's difficulty in adjusting
the loss with Family Urology.

In short, the record contains ample evidence that
Cincinnati (through Mr. Kapala) was justified in rely-
ing, and did rely, on the representations of Citizens
(through Mr. Griggs) that the subrogation claim
would be processed without difficulty, once all the
documentation was complete. The fact that Citizens
did not intend to honor its representations is demon-
strated by the fact that it *did not* honor them. It is not
significant whether the final decision was made by
Mr. Griggs or another Citizens' employee, as long as
both the intent and the decision can be imputed to
Citizens.

IV

We agree with the dissenting judge in the Court of
Appeals that summary disposition was not appropri-
ate. Where Cincinnati had submitted a timely claim to
Citizens for the primary contents loss, and the two
insurers had agreed to cooperate regarding the
processing of the matter in its entirety, Citizens was

estopped from asserting the statute of limitations as a bar to Cincinnati's circuit court action. Because of our resolution of the estoppel issue, we need not address the question of judicial tolling.

For the reasons given, we reverse the judgments of the Court of Appeals and the circuit court and remand this matter to the circuit court for further proceedings. MCR 7.201(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, RILEY, and WEAVER, JJ., concurred.

BOYLE, J. (*concurring*). I agree with the result under the unique circumstances presented. Although the evidence of intentional or negligent conduct on the part of defendant designed to forestall negotiations is thin, the plaintiff here should not be denied its day in court on the basis of its compliance with defendant's desire to handle the claim using a procedure of defendant's choice. Thus, I concur with the majority opinion to the extent its analysis relies on the facts presented here, which justify a unique exception to the general requirement that a plaintiff seeking to establish equitable estoppel prove the party seeking to assert the statute of limitations intentionally or negligently misrepresented or concealed a material fact.

KELLY, J., took no part in the decision of this case.