*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA PERSON,

       Plaintiff-Appellant,

v

TRANZ 1 SOLUTIONS, LLC and PIONEER STATE MUTUAL INSURANCE COMPANY,

       Defendants-Appellees,

and

CACT GROWTH & NEW DEVELOPMENT, LLC and RENN INSURANCE AGENCY, INC,

       Defendants.

UNPUBLISHED
April 11, 2024

No. 364494
Oakland Circuit Court
LC No. 2021-186850-CZ

Before: RIORDAN, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendants, Tranz 1 Solutions, LLC, Pioneer State Mutual Insurance Company, CACT Growth & New Development, LLC, and Renn Insurance Agency, Inc.[1] On appeal, plaintiff does not challenge the trial court's decision granting summary disposition in favor of defendants, but

---

[1] In the order appealed, the trial court stated that it was a final order and dismissed plaintiff's complaint. But, at the time, there was a default judgment against CACT outstanding. The trial court subsequently clarified that the failure to dismiss CACT in the order appealed from was an oversight and that the order appealed from was intended to dismiss the action altogether, including plaintiff's claims against CACT.

instead argues that the trial court erred by denying plaintiff's request to amend her complaint to add Tranz 1's insurer, Old Republic Insurance Company, as a party. We affirm.

## I. BACKGROUND

On June 5, 2019,[2] two vehicles drove onto plaintiff's lawn and got stuck. Tranz 1 never denied or contested the fact that it owned at least one the vehicles. According to an email plaintiff sent shortly after this incident, the vehicles got stuck in plaintiff's septic-tank field, and a "tow truck had to pull over the septic tank to get them out." This resulted in damage to plaintiff's septic-tank system; plaintiff said that the system now "leaks in to [sic] the driveway" as well as into the drain field. Plaintiff said that she spoke with a contractor, who estimated that it would cost up to $45,000 to fix, possibly more pending county permits and the type of septic system that the county required.

Shortly after this incident, plaintiff was in contact with Colleen Bruckner from "Sedgwick Claims Management Services, Inc.," which is the company that "manages claims on behalf of Old Republic," Tranz 1's automobile insurer. Bruckner's email signature states that she is a "Claims Representative-Consumer" with Sedgwick. Plaintiff's correspondence with Bruckner shows that Sedgwick was aware of plaintiff's damages; plaintiff explained the extent of her damages, was requested to—and did—send photos of her damages, and kept Sedgwick representatives up to date about the steps that plaintiff was taking to address the damages. During the course of the emails, plaintiff said that she was running into problems with installing the septic system, and that she was required to hire an engineer and submit a design plan to the county for approval of the new septic system.

On July 16, 2019, the Oakland County Health Division sent plaintiff a letter stating that plaintiff's "permit to install an onsite wastewater treatment system is denied" because plaintiff's property could not safely accommodate such a system. Plaintiff provided this letter to Bruckner in an email dated July 23, 2019. Plaintiff subsequently hired a contractor to "draw[] up plans for the septic system," and forwarded the contractor's information and cost estimate to Sedgwick on August 8, 2019.

On December 3, 2019, Bruckner on behalf of Sedgwick sent plaintiff a letter informing plaintiff that Sedgwick was missing documents necessary to process plaintiff's claim, and she needed a reply by December 17, 2019, or Sedgwick would assume that plaintiff did "not wish to pursue [her] claim." Plaintiff's counsel responded on December 16, 2019, informing Bruckner that plaintiff was in the process of collecting all of the supporting documents and, when finished, would "make a 'demand' regarding . . . damages."

On March 11, 2020, the Oakland County Health Division sent plaintiff a letter stating that it had received her proposed engineered plan for a new septic system but was placing the plan on hold so that plaintiff could address several problems that had been identified with plaintiff's plans. The letter concluded by stating that the plan as submitted contained "certain site conditions" so "no permit may be issued at this time." But the letter advised that plaintiff could submit "changes

---

[2] Plaintiff's complaint originally misstated the date as June 15, 2019.

and corrections" to the current plan to bring it into compliance. Plaintiff apparently addressed the problems identified with her plans because the Oakland County Health Division issued plaintiff a permit to install an onsite sewage disposal system on May 22, 2020.

The record contains no information about what transpired between March 2020 and November 2020. On November 3, 2020, David Clark, whose email signature line suggests that he is a "Forensic Engineer" affiliated with Sedgwick, sent an email to Plaintiff's attorney stating that Bruckner had "asked for a report," and that Clark hoped to have it completed "in the next two days."[3]

On March 12, 2021, plaintiff filed a two-count complaint against Tranz 1 and CACT, seeking to recover for the damage to plaintiff's property. Count 1 alleged that plaintiff's property was damaged as a result of intentional trespass, and Count 2 alleged that plaintiff's property was damaged as a result of negligence.

On April 30, 2021, Bruckner sent a letter to plaintiff's counsel stating:

> I am following up in regards to the property damage claim for your client [plaintiff]. Our insured informed us that they had received a notice from you. We had previously accepted liability for the damages, and had set up an inspection for damages. Have you had an inspection done of the damages, or is there an estimate or invoice for repair?

On July 15, 2021, plaintiff's counsel sent a letter to Bruckner. In that letter, plaintiff's counsel referenced a June 14, 2021 email that supposedly "asked . . . for an update of [plaintiff's] damages" but that email does not appear in the lower court file. Regardless, the July letter claimed that plaintiff's damages amounted to $90,097.69. Attached to the letter was documentation to support the amount of damages requested.

On July 22, 2021, Ryan Williams, whose email signature identifies him as a "Claims Team Lead—Liability" with Sedgwick, sent an email to plaintiff's counsel in response to the July 15 letter. In the email, Williams stated that there were some charges that were "in question," but agreed that the "Total of Charges" amounted to at least $76,572.69.

Further negotiations apparently took place because on August 10, 2021, Williams sent plaintiff's attorney another email with a new proposed payment. Williams' email discussed plaintiff's demands, items included in plaintiff's demand that Williams wanted removed, and charges in plaintiff's demand that Williams was not prepared to agree to but was willing to negotiate about. The email concluded by proposing a payment of $77,051.85. This is the last

---

[3] Plaintiff claims in her brief on appeal that Clark contacted plaintiff's counsel on January 7, 2020, and states that counsel's notes from the call are available. Those notes are not part of the lower court record, however, and plaintiff has not moved to expand the record on appeal. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.").

correspondence of any kind between plaintiff (or plaintiff's counsel) and Old Republic (or its agents) in the lower court record. While it is not clear what happened, it is clear that settlement negotiations between Old Republic and plaintiff broke down at some point after August 2021, and Old Republic thereafter refused to pay any amount to plaintiff to settle her claim.[4]

Back in the instant action, on August 25, 2021, Tranz 1 filed an answer and affirmative defenses to plaintiff's complaint. The case then stalled until December 29, 2021, when Tranz 1 moved for summary disposition on grounds that plaintiff's claim should have been brought against Tranz 1's automobile insurer (Old Republic), not Tranz 1. Tranz 1 recognized that, generally, plaintiff would be able to amend her complaint to add Old Republic as a party, but argued that any amendment in this case would be futile because any claim against Old Republic was barred by the statute of limitations for actions to recover property protection insurance benefits.

Plaintiff did not respond to Tranz 1's motion, and the parties instead entered a stipulated order on March 10, 2022, in which they agreed that (1) plaintiff would be permitted to add two new parties as defendants and (2) the hearing on Tranz 1's motion would be adjourned "without date," to be rescheduled by the trial court after the new parties were added and Tranz 1 refiled its dispositive motion. Pursuant to this order, plaintiff filed an amended complaint on April 6, 2022. In addition to adding Pioneer and Renn as parties to the action, plaintiff's amended complaint added two new counts. In Count III, plaintiff alleged a breach-of-contract claim against Pioneer. In Count IV, plaintiff alleged a claim of negligence against Renn.

On June 22, 2022, Tranz 1 refiled its motion for summary disposition, raising the same arguments it raised in its December 2021 motion. Briefly, Tranz 1 argued that plaintiff's complaint against Tranz 1 was barred by the no-fault act, and that plaintiff should have brought her claims against Tranz 1's insurer, Old Republic. Tranz 1 also reiterated its belief that adding Old Republic as a defendant would be futile because any claim plaintiff may have had against Old Republic was barred by the applicable statute of limitations.

In response to Tranz 1's motion, plaintiff argued that there was an exception to the no-fault act for intentional torts, and plaintiff was alleging that the damage to her property was caused by Tranz 1's employees' trespass. Plaintiff alternatively argued that she should be permitted to amend her complaint to add Old Republic as a party, and that the amendment would not be futile because the statute of limitations should be equitably tolled. Plaintiff contended that equitable tolling was available in this case because she had negotiated with Old Republic in good faith since the accident first occurred; she had cooperated with Old Republic's investigation whenever requested; and she only failed to file a timely complaint against Old Republic because she relied on Old Republic's April 30, 2021 representation that it was accepting liability for the damage to plaintiff's property. Plaintiff concluded that, under these facts, Old Republic should be estopped from asserting a statute-of-limitations defense.

The trial court heard Tranz 1's motion for summary disposition on December 21, 2022. After brief argument, the trial court delivered a ruling from the bench. In pertinent part, the trial

---

[4] Plaintiff repeatedly blames the breakdown of negotiations on Old Republic's counsel, but nothing in the lower court record corroborates plaintiff's accusations.

court granted Tranz 1's motion for summary disposition because the proper defendant for plaintiff's claims against Tranz 1 was Tranz 1's insurer, Old Republic. With respect to plaintiff's request to amend her complaint, the court reasoned that an amendment would be futile because any such claim would be time-barred.

This appeal followed.

## II. STANDARD OF REVIEW

If there are no questions of fact, whether a cause of action is barred by the statute of limitations presents a question of law reviewed de novo. *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 638; 692 NW2d 398 (2004). Likewise, whether equitable relief is proper presents a question of law reviewed de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

## III. ANALYSIS

On appeal, plaintiff only argues that the trial court erred by not granting plaintiff leave to amend her complaint to add Old Republic as a defendant. We disagree.

Tranz 1 moved for summary disposition under MCR 2.116(C)(7), (8), and (10), but the trial court granted the motion under only MCR 2.116(C)(8) and (10). Under MCR 2.116(I)(5), "If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.118(A)(2) in turn provides that, generally, a party can only amend a pleading by leave of the court, but clarifies that "[l]eave shall be freely given when justice so requires." One reason to deny a party leave to amend a pleading is when the amendment would be futile. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). Examples of futile amendments to pleadings include merely restating the pleading's allegations and adding allegations that would still result in dismissal. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018).

It cannot be seriously disputed that, absent tolling, any claim against Old Republic resulting from the June 5, 2019 accident would be barred by the statute of limitations in MCL 500.3145(5).[5] That statute states, "An action for recovery of property protection insurance benefits may not be

---

[5] The no-fault act was substantially amended by 2019 PA 21, effective June 11, 2019. Plaintiff's original complaint alleged that the at-issue accident took place four days after this effective date (June 15, 2019). But she later alleged that this was a scrivener's error and was allowed to amend her complaint to reflect that the at-issue accident took place six days before the effective date of 2019 PA 21 (June 5, 2019). Both parties cite MCL 500.3145(5) as the applicable statute of limitations, which was the statute in effect when plaintiff filed her suit. At the time of plaintiff's accident, however, this statute of limitations was located in MCL 500.3145(2). Because the parties agree that the current version of the statute is applicable here, we will likewise refer to and rely on the current version of MCL 500.3145 in this opinion.

commenced later than 1 year after the accident." MCL 500.3145(5). This statute of limitations expired on June 5, 2020.[6] Plaintiff did not bring her action against Tranz 1 until March 12, 2021, well after the statute of limitations in MCL 500.3145(5) expired.

Old Republic, moreover, was not a party to this action as originally filed, so any allegation against Old Republic in an amended complaint would not relate back to plaintiff's original March 12, 2021 filing. See *Miller v Chapman Contracting*, 477 Mich 102, 106; 730 NW2d 462 (2007) ("The relation-back doctrine does not apply to the addition of new parties."). Nor did filing this action toll the statute of limitations; the general rule is that, for any defendant not party to an action, "the statute of limitations continues to run in their favor until" they are "made parties" to the action. *Ciotte v Ullrich*, 267 Mich 136, 139; 255 NW 179 (1934) (quotation marks and citation omitted). Accordingly, if Old Republic was added as a party now and was permitted to raise a statute-of-limitations defense, Old Republic would plainly prevail because any claim against it arising out of the June 5, 2019 accident would be time-barred.

To avoid this result, plaintiff argues that Old Republic should not be permitted to assert (or, stated differently, should be estopped from asserting) the statute of limitations as a defense. Plaintiff relies on two cases in support of this argument: *Cincinnati Ins Co v Citizens Ins Co*, 454 Mich 263; 562 NW2d 648 (1997) and *Matti Awdish, Inc v Williams*, 117 Mich App 270; 323 NW2d 666 (1982).

## A. *CINCINNATI INS*

In *Cincinnati Ins*, a building insured by the plaintiff was damaged in a motor vehicle accident. *Id*. at 264. The plaintiff insurance company coordinated with the defendant no-fault insurer to iron-out details about the plaintiff's subrogation claim. The accident occurred in February 1992. *Id*. The plaintiff provided documents to the defendant in January 1993 substantiating the plaintiff's $207,400 loss for its insured's property damage, with an accompanying letter stating that the plaintiff was still compiling documents to determine its insureds "business-interruption loss." *Id*. at 265-266. Defendant responded by saying that it "did not want to handle the claim piecemeal, i.e., to handle the contents-damage part separately from the business-interruption loss." *Id*. at 266. In accordance with the defendant's wishes, the plaintiff finalized its documents substantiating its business-interruption loss, and, in May 1993, sent those documents to defendant and requested a check for $231,233. *Id*. Following additional contacts in June and July 1993, the defendant in August 1993 advised the plaintiff that it "was not going to pay the subrogation claim" because it was now time-barred. *Id*. at 267. The plaintiff accordingly initiated suit in September 1993, arguing in relevant part that the defendant should be equitably estopped from raising a statute-of-limitations defense. *Id*.

---

[6] Plaintiff does not offer any argument that the statute was tolled by AO 2020-3. See, e.g., *Carter v DTN Mgt Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023); (Docket No. 360772), slip op at 4-5. Even if she did, it would not make a difference. Under the broadest interpretation of AO 2020-3, the statute of limitations was tolled 102 days. See, e.g., *Compagner v Burch*, ___ Mich App, ___; ___ NW3d ___ (2023); (Docket No. 359699), slip op at 9. September 15, 2020, is 102 days after June 5, 2020.

Our Supreme Court agreed. The Court first explained that the doctrine of equitable estoppel in this context "is essentially a doctrine of waiver that extends the applicable period for filing a lawsuit by precluding the defendant from raising the statute of limitations as a bar." *Id.* at 270. "One who seeks to invoke the doctrine generally must establish that there has been (1) a false representation or concealment of a material fact, (2) an expectation that the other party will rely on the misconduct, and (3) knowledge of the actual facts on the part of the representing or concealing party." *Id.* Generally, for the doctrine to apply, a defendant must engage in intentional or negligent conduct designed to induce the plaintiff to bring an untimely action. *Id.* "Negotiations intended to forestall" the plaintiff from bringing a timely suit can be sufficient under the right circumstances. *Id.* citing *Friedberg v Ins Co of N Am*, 257 Mich 291, 293; 241 NW 183 (1932).

The Court explained that the first element of equitable estoppel was met in the case before it because the defendant made false or negligent representations to the plaintiff by suggesting that it would review any documents submitted by the plaintiff "to determine whether the loss was appropriate." *Cincinnati Ins*, 454 Mich at 271. The Court reasoned that the plaintiff relied on these representations to not bring suit sooner "*for the convenience of* [*the defendant*]," such that it would be "unjust to allow" the defendant to now assert a statute-of-limitations defense to avoid liability. *Id.* The Court further reasoned that the plaintiff always kept the defendant informed about its claim, which included submitting documents substantiating its $207,400 loss in January 1993—within the limitations period. *Id.* Besides evidence in the record, the Court relied on the absence of evidence that the defendant expressed displeasure with the manner in which plaintiff was processing the claim. *Id.* "To the contrary, the record indicates that [the plaintiff] proceeded as it did *at the request of* [*the defendant*]." *Id.* at 271-272. The Court summarized its holding as follows:

> In short, the record contains ample evidence that [the plaintiff] was justified in relying, and did rely, on the representations of [the defendant] that the subrogation claim would be processed without difficulty, once all the documentation was complete. The fact that [the defendant] did not intend to honor its representations is demonstrated by the fact that it did not honor them. It is not significant whether the final decision was made by [one of the defendant's employees], as long as both the intent and the decision can be imputed to [the defendant]. [*Id.* at 272.]

Unlike the plaintiff in *Cincinnati Ins*, plaintiff here cannot rely on the doctrine of equitable estoppel to toll the statute of limitations for Old Republic because plaintiff cannot point to any intentional or negligent conduct by Old Republic that induced plaintiff to bring an untimely action. Arguing against this result, plaintiff first directs this Court's attention to the April 30, 2021 email in which Bruckner said, "*We had previously accepted liability for the damages*, and had set up an inspection for damages." (Emphasis added.) This plainly could not have induced plaintiff to not bring her action in an untimely manner because, by the time this email was sent, the statute of limitations had long since expired.[7] Plaintiff alternatively argues that Old Republic "accept[ed] liability for damages" a second time in its August 10, 2021 email proposing a payment of

---

[7] Plaintiff, moreover, does not identify the communication in which Old Republic "previously accepted liability for damages."

$77,051.85. This argument is unconvincing for the same reason as plaintiff's first argument—the August 10, 2021 email was sent well after the statute of limitations expired. Plainly, communications *after* the limitations period expired could not induce plaintiff to bring her action after the limitations period expired.

More generally, there is nothing in the record to suggest that Old Republic did anything to induce plaintiff to bring an untimely action. Shortly after the accident, plaintiff was in contact with a representative from Sedgwick, the company that manages Old Republic's claims. Plaintiff forwarded relevant information about her claim to the representative. That information was apparently insufficient to process plaintiff's claim, however, so the representative sent a formal letter to plaintiff on December 3, 2019, saying that the representative needed more documentation. Plaintiff's counsel responded on December 16, 2019, assuring the representative that plaintiff was in the process of collecting the necessary documentation. Unfortunately, nothing in the record suggests that plaintiff forwarded that documentation to the representative before the statute of limitations expired. Indeed, the record contains *no* communications between Old Republic and plaintiff between the December 2019 letters and the running of the statute of limitations in June 2020. The next communication between Old Republic and plaintiff in the record is the November 2020 email from the engineer affiliated with Old Republic. Thus, unlike the plaintiff in *Cincinnati Ins*, plaintiff here did not submit documents to Old Republic substantiating her loss and demanding payment before the statute of limitations expired. Correspondingly, unlike the defendant in *Cincinnati Ins*, the defendant here did not respond to such a request in a way that induced plaintiff to believe that her claim would be processed without difficulty once all the documentation was received.

On this record, plaintiff cannot attribute the delay in filing her complaint to Old Republic's conduct or representations. With that being the case, plaintiff cannot invoke the doctrine of equitable estoppel to prevent Old Republic from raising a statute-of-limitations defense. See *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 205; 747 NW2d 811 (2008) ("The trial court's factual finding that defendant caused delays is insufficient to grant estoppel because there is no evidence that plaintiff relied on anything defendant did or said."). Stated differently, plaintiff's failure to bring a timely action was her own; it was not induced by an act or representation by Old Republic. See *id*.

## B. *MATTI AWDISH*

In *Matti Awdish*, which was decided 15 years before *Cincinnati Ins*, this Court addressed whether a no-fault insurer should be allowed to raise a statute-of-limitations defense after a plaintiff named the no-fault insurer's insured, rather than the insurer itself, as the defendant in a suit for no-fault benefits. The plaintiffs' property was damaged as a result of the defendant-insured's operation of a motor vehicle in November 1978. *Matti Awdish*, 117 Mich App at 273. The defendant's insurer, Farmers Insurance Group, offered the plaintiffs a settlement, but the plaintiffs refused, believing that the amount offered was insufficient. *Id*. The plaintiffs thereafter filed suit against the defendant, who eventually moved to dismiss, arguing that the proper defendant was the defendant's insurer, Farmers. *Id*. at 272. The trial court granted the defendant's motion, and the plaintiffs moved to amend their complaint to add Farmers as a defendant. *Id*. The trial court denied the motion, and the plaintiffs appealed. *Id*.

This Court first concluded that Farmers was indeed the proper defendant, so "the grant of summary judgment in [the] defendant's favor was proper." *Id*. at 277. Turning to the plaintiffs' request to amend their complaint, this Court first noted that this motion was "apparently denied" because it was time-barred by the statute of limitations then in MCL 500.3145(2) (now in subsection(5)). *Matti Awdish*, 117 Mich App at 277. Then, while recognizing the general rule that filing an action against one defendant does not toll the statute of limitations against another defendant, *Matti Awdish* reasoned that this rule was "not sacrosanct," and its application depended on the particular facts of the case. *Id*. at 278.

And on the particular facts of the case before it, *Matti Awdish* concluded that "the statute of limitations should not be a bar to allowing the amendment adding the insurer as a party defendant." *Id*. *Matti Awdish*'s reasoning for this result leaned heavily on Farmers' gamesmanship in getting plaintiff's action dismissed. After the plaintiff served the defendant, he forwarded the information to Farmers, who retained a law firm to handle the defendant's defense. *Id*. It was thus "obvious that the Farmers Insurance Group had actual knowledge of the pendency of the suit." *Id*. But neither Farmers nor the law firm it retained on defendant's behalf acted diligently in getting the case against the defendant dismissed. Instead, the law firm retained by Farmers waited to bring the defendant's motion for summary disposition (which argued that the plaintiff sued the wrong defendant) until *after* the one-year limitations period had "safely expired." *Id*. The *Matti Awdish* panel inferred from this sequence of events that the actions were taken "with malice aforethought," particularly because the defendant knew from the start of litigation that he was not the proper defendant as evidenced by his answer "assert[ing] as an affirmative defense that he was 'an improper party to this litigation.' " *Id*. The panel then contrasted these events with what would have "[p]resumably" happened if the defendant had hired his own attorney—"that lawyer would have immediately moved for summary judgment and not have waited until the limitations period had run against the insurer." *Id*. at 279. The no-fault act was also still somewhat novel at the time, and the panel believed that it was not clear "based on existing present" that "the insured was an improper party." *Id*.

Additionally, *Matti Awdish* likened the situation before it to "so-called misnomer cases where the right party is served under a wrong name or in an incorrect capacity." *Id*. While conceding that the case did "not involve a true misnomer problem," the panel believed that courts in "misnomer cases" tolled the statute of limitations "because the true defendant had notice of the litigation and was not prejudiced by the amendment," and that reasoning was equally applicable to the case before it. *Id*. Not only did Farmers know of the action—"it ran the defense." *Id*. at 280. And "given the fact that the insurer actually controlled the defense in this action, the policy behind recognizing a statute of limitations defense—the foreclosure of stale claims—is wholly inapplicable." *Id*.

The instant case is readily distinguishable from *Matti Awdish* on its facts.[8] In *Matti Awdish*, the plaintiffs brought a complaint that would have been timely against Farmers if it had named Farmers as a defendant. Here, plaintiff's March 2021 complaint would *not* have been timely against Old Republic. In *Matti Awdish*, this Court relied heavily on the fact that the insurer "ran"

---

[8] Neither party raises any issue with the reasoning from *Matti Awdish*, so we accept that reasoning as proper for purposes of this opinion.

the insured's defense and waited to bring a motion for summary disposition until the statute of limitations for a claim against the insurer had "safely expired." *Id*. at 278. Here, it is not evident that Old Republic "ran" Tranz 1's defense. But even if it did, Tranz 1 did not engage in gamesmanship by waiting to bring its motion for summary disposition until plaintiff's claim against Old Republic had expired. Rather, as already stated, plaintiff's claim against Old Republic was already time-barred when plaintiff filed her March 2021 complaint. In *Matti Awdish*, the plaintiffs named the wrong defendant in part because "based on existing precedent, it could not be said to have been obvious that the insurer was the proper party defendant to a suit seeking no-fault benefits for economic loss[.]" *Id*. at 279. Here, plaintiff did not file this suit seeking no-fault benefits, so in that sense, she did not name the wrong defendant. Regardless, four decades after *Matti Awdish* was decided, plaintiff cannot claim confusion that Old Republic, as Tranz 1's insurer, was the proper defendant for any claim seeking no-fault benefits.

Accordingly, we reject plaintiff's argument that the trial court should have granted plaintiff's request to amend her complaint on the basis of this Court's opinion in *Matti Awdish*.

## C. NECESSARY JOINDER

Plaintiff alternatively argues that she should be permitted to amend her complaint to add Old Republic because Old Republic is a necessary party. MCR 2.205 governs the necessary joinder of parties, providing in relevant part:

> **(A) Necessary Joinder.** Subject to the provisions of subrule (B) and MCR 3.501, persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants in accordance with their respective interests.

> **(B) Effect of Failure to Join.** When persons described in subrule (A) have not been made parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action, and may prescribe the time and order of pleading. . . .

"The purpose of the rule is to prevent the splitting of causes of action and to ensure that all parties having a real interest in the litigation are present." *Mason Co v Dep't of Cmty Health*, 293 Mich App 462, 489; 820 NW2d 192 (2011). "A party is indispensable to a case if that party has an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." *Mather Inv'rs, LLC v Larson*, 271 Mich App 254, 257-258; 720 NW2d 575 (2006). "[W]here a party's presence in the action is not essential to the court rendering complete relief, factors such as judicial economy or avoidance of multiple litigation are not enough to compel joinder." *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 96; 535 NW2d 529 (1995).

For her necessary-joinder argument, plaintiff merely restates MCR 2.205, recaps her negotiations with Old Republic, then concludes, "As set forth above, [O]ld Republic Insurance Company has an interest in the subject matter of this case [such] that its presence in the action is

essential to permit the court to render complete relief, and therefore it must be made a party and aligned as a defendant in this matter." This last assertion is simply a restatement of MCR 2.205(A) and in no way explains how Old Republic satisfies the requirements of MCR 2.205(A). We accordingly conclude that plaintiff's necessary-joinder argument is abandoned. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

Even addressing the merits of plaintiff's arguments, we would conclude that Old Republic was not a necessary party, so joinder was not required under MCR 2.205. Plaintiff's amended complaint alleged four counts: Count I alleged trespass against Tranz 1 and CACT; Count II alleged negligence against Tranz 1 and CACT; Count III alleged breach of contract against Pioneer; and Count IV alleged negligence by Renn. Plaintiff does not seek to add Old Republic as a party to resolve any of these claims.[9] Rather, plaintiff seeks to add Old Republic as a party to assert a claim for no-fault benefits. Just like Tranz 1, CACT, Pioneer, and Renn would not be necessary parties to render complete relief to plaintiff in her claim against Old Republic seeking no-fault benefits, Old Republic is not a necessary party to render complete relief to plaintiff in her various claims against those parties. In short, Old Republic's joinder in this action is not essential to a determination of the rights and obligations between plaintiff and the named defendants, nor to permit the court to render complete relief to plaintiff on her asserted claims. Accordingly, Old Republic cannot be compelled to join this action as a necessary party. See *Hofmann*, 211 Mich App at 96-97 ("Notwithstanding any common interest the [unnamed party] may have in the subject matter of this action, its joinder is not essential to a determination of the rights and obligations between plaintiffs and [the defendant], nor to permit the court to render complete relief. Therefore, the [unnamed party] may not be compelled to join this action as a necessary party.").

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[9] Indeed, if Old Republic was added as a party now, it would be not only the lone defendant in this action but plaintiff would not be seeking relief on any of the claims alleged in her amended complaint. The trial court granted summary disposition in favor of the four originally-named defendants, and plaintiff does not contest those rulings on appeal.