*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF STATE TREASURER FOR FORECLOSURE FOR UNPAID TAX.

---

STATE TREASURER,

    Petitioner-Appellant/Cross-Appellee,

v

GORDON BECK,

    Claimant-Appellee/Cross-Appellant.

FOR PUBLICATION
June 18, 2026
10:02 AM

No. 376481
Livingston Circuit Court
LC No. 2013-027515-CZ

---

STATE TREASURER,

    Petitioner-Appellant,

v

GORDON BECK,

    Respondent-Appellee.

No. 376482
Livingston Circuit Court
LC No. 2013-027515-CZ

---

STATE TREASURER,

    Petitioner-Appellant,

v

STEFANIE DEVER as Personal Representative of ESTATE OF SUZANNE JOSEPHSON,

    Respondent-Appellee.

No. 376653
Livingston Circuit Court
LC No. 2013-027515-CZ

---

STATE TREASURER,

-1-

Petitioner-Appellant,

v

DOUGLAS WEBSTER and VALERIE WEBSTER,

Respondents-Appellees.

No. 376655
Livingston Circuit Court
LC No. 2013-027515-CZ

STATE TREASURER,

Petitioner-Appellant,

v

NICHOLAS ROY as Member of NICHOLSON-
BRIGHTON LLC,

Respondent-Appellee.

No. 376656
Livingston Circuit Court
LC No. 2013-027515-CZ

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

RICK, J.

In these consolidated appeals,[1] petitioner, the Treasurer of the State of Michigan, challenges several orders concerning respondents' claims to surplus proceeds generated by tax-foreclosure sales. Petitioner foreclosed on and sold parcels of real property previously owned by respondents in 2014. In late 2024 and early 2025, respondents sought to recover the surplus proceeds from those sales under MCL 211.78t of the General Property Tax Act (GPTA), MCL 211.1 *et seq*.

In Docket No. 376481, the trial court entered a July 8, 2025 order requiring petitioner to pay respondent Gordon Beck the surplus proceeds generated by the sale of his property. Petitioner appeals that order as of right, and Beck cross-appeals the portion of the order denying his request for interest. In Docket No. 376482, petitioner appeals by leave granted the trial court's June 27,

---

[1] *In re Petition for Foreclosure*, unpublished order of the Court of Appeals, entered August 13, 2025 (Docket No. 376482); *In re Petition for Foreclosure*, unpublished order of the Court of Appeals, entered August 12, 2025 (Docket No. 376653); *In re Petition for Foreclosure*, unpublished order of the Court of Appeals, entered August 12, 2025 (Docket No. 376655); *In re Petition for Foreclosure*, unpublished order of the Court of Appeals, entered August 12, 2025 (Docket No. 376656). Each of these four orders also consolidated these appeals with Docket No. 376481 on the Court's own motion.

2025 order denying petitioner's motion for summary disposition with respect to Beck's claim. Petitioner also appeals by leave granted substantially identical orders entered on July 10, 2025 denying its motions for summary disposition with respect to the claims of respondents Stefanie Dever, Douglas and Valerie Webster, and Nicholas Roy in Docket Nos. 376653, 376655, and 376656, respectively.

These appeals present a common dispositive question: When did respondents' respective claims accrue? Was it (a) in 2014, when the foreclosure sales generated surplus proceeds that petitioner retained; (b) at some later date after the enactment of MCL 211.78t in 2020; or (c) when our Supreme Court held in 2024 that the statute applies retrospectively? See *Schafer v Kent Co*, 515 Mich 1; ___ NW3d ___ (2024). We conclude that given respondents did not pursue inverse-condemnation claims within the then-applicable limitations period, their claims were time-barred before MCL 211.78t was enacted in 2020. Neither *Schafer* nor its predecessor, *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020), revived claims that were already extinguished. Accordingly, we reverse.

## I. FACTUAL BACKGROUND

These consolidated appeals arise from foreclosure proceedings initiated by petitioner in 2013 against several parcels of real property located in Livingston County for failure to pay property taxes. Acting as a foreclosing governmental unit (FGU) under the GPTA, petitioner filed a petition for foreclosure. In early 2014, the circuit court entered judgments of foreclosure against several properties previously owned by respondents pursuant to MCL 211.78k. Upon entry of those judgments, fee simple title vested absolutely in petitioner as the FGU.

The properties at issue were later sold at public auction in August and September 2014. Each property sold for more than the amount owed in delinquent taxes, interest, penalties, and fees, thereby generating surplus proceeds. Petitioner retained those proceeds. At the time the properties were sold, the GPTA permitted the FGU to retain surplus proceeds from tax-foreclosure sales and provided no statutory mechanism by which former property owners could recover the surplus.

Six years later, our Supreme Court decided *Rafaeli*. The Court held that former owners of properties sold at tax-foreclosure sales for more than the amounts owed in delinquent taxes, interest, penalties, and fees possess "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." *Rafaeli*, 505 Mich at 484. That right continues to exist after title to the properties vests with the FGU. *Id*. Accordingly, an FGU's retention of the surplus proceeds constitutes a taking under Const 1963, art 10, § 2, and the former owners are entitled to just compensation in the form of the return of the surplus proceeds. *Rafaeli*, 505 Mich at 484-485.

Following *Rafaeli*, the Legislature enacted 2020 PA 255 and 2020 PA 256, effective December 22, 2020. Those enactments added MCL 211.78t to the GPTA. MCL 211.78t establishes a statutory procedure through which former owners may seek recovery of "remaining proceeds" within the original foreclosure proceeding. The statute provides that the process is "the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state." MCL 211.78t(11).

The Legislature established one procedure for claims arising from properties sold after July 17, 2020. MCL 211.78t(1)(a). It also conditionally established a procedure for claims arising from properties sold before July 18, 2020, "only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively." MCL 211.78t(1)(b)(i). The Legislature further enacted MCL 211.78l, which generally imposes a two-year limitations period for claims arising from tax foreclosures. MCL 211.78l(1).

In *Schafer*, our Supreme Court held that *Rafaeli* applies retroactively and that MCL 211.78t applies to claims arising from tax-foreclosure sales that occurred before *Rafaeli* was decided. *Schafer*, 515 Mich at 29-46. The Court explained that *Rafaeli* did not announce a new rule of law, but instead applied longstanding constitutional and common-law principles. *Id*. at 29-39. The Court also held that MCL 211.78t establishes "a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds." *Id*. at 44.

The Court recognized, however, that a retrospective application of the new two-year limitations period in MCL 211.78l could unconstitutionally extinguish some claims before claimants had a reasonable opportunity to pursue them. *Id*. at 47-51. Accordingly, claimants whose claims accrued before December 22, 2020, but whose limitations periods expired between the enactment of MCL 211.78t and the Court's decision in *Schafer*, must be afforded the balance of the time remaining under the otherwise-applicable limitations period as of December 22, 2020. *Id*. Critically, the Court expressly clarified that its holding did not "revive claims that were not subject to pending litigation and were already time-barred before December 22, 2020." *Id*. at 50 n 123.

After our Supreme Court decided *Schafer* in July 2024, respondents initiated proceedings under MCL 211.78t to recover the surplus proceeds from the 2014 foreclosure sales. Beck and the Websters filed notices of intention to claim interest in the proceeds on November 25, 2024. Dever and Roy filed notices of intention on March 31, 2025. Beck filed a certified motion to disburse the remaining proceeds on December 6, 2024. In addition to the surplus proceeds, Beck sought statutory interest under MCL 600.6013(8). Dever, Roy, and the Websters filed substantially similar motions to disburse the remaining proceeds on May 20, 2025.

Beck initially noticed his motion for a hearing in January 2025. The parties agreed that the hearing should be adjourned because additional claimants could file notices of intention through March 31, 2025. A dispute then arose concerning when petitioner was required to provide the information specified in MCL 211.78t. Petitioner maintained that the statutory timetable governing claims arising from pre-*Rafaeli* foreclosure sales did not require it to respond until July 1, 2025. Beck argued that petitioner was required to respond after receiving his motion. The trial court agreed with Beck and ordered petitioner to provide the required information within seven days. Petitioner complied with that order.

Petitioner subsequently moved for summary disposition under MCR 2.116(C)(7) (claim barred by operation of law), arguing that respondents' claims were barred by the applicable statute of limitations. Petitioner asserted that respondents' constitutional claims accrued when petitioner retained the surplus proceeds generated by the foreclosure sales in 2014. According to petitioner, respondents could have pursued inverse-condemnation claims against the State at that time, even though the Legislature had not yet enacted MCL 211.78t. Because claims against the State were

subject to the three-year limitations period in MCL 600.6452(1), petitioner maintained that respondents' claims expired no later than September 2017. Petitioner further argued that *Rafaeli*, the enactment of MCL 211.78t, and *Schafer* did not revive claims that had already become time-barred. With respect to Beck's request for interest, petitioner additionally sought summary disposition under MCR 2.116(C)(8). Petitioner argued that MCL 211.78t does not authorize an award of interest and that Beck sought the return of property rather than a money judgment subject to interest under MCL 600.6013(8).

Respondents opposed summary disposition. They argued that the three-year limitations period applicable to actions in the Court of Claims did not govern because a claim under MCL 211.78t must be pursued in the original circuit-court foreclosure proceeding. Respondents further maintained that their claims could not have accrued in 2014 because MCL 211.78t did not then exist. In their view, the claims accrued in 2024, when our Supreme Court decided *Schafer* and held that MCL 211.78t applies retrospectively to claims arising from pre-*Rafaeli* foreclosure sales. Alternatively, respondents argued that the earliest possible accrual date was July 2020, when our Supreme Court decided *Rafaeli*. Respondents also asserted that the filing of class actions in 2019 tolled the applicable limitations periods.

The trial court agreed with respondents' accrual argument and denied petitioner's motions for summary disposition. In its written opinion and order addressing Beck's claim, the court concluded that Beck had no right to bring a claim under MCL 211.78t until our Supreme Court decided *Schafer* on July 29, 2024. The court therefore determined that Beck's claim accrued on that date and was timely. The court rejected petitioner's argument that the claim accrued in 2014, reasoning that the authorities on which petitioner relied addressed constitutional takings claims against the State rather than claims brought under MCL 211.78t. The court separately rejected Beck's request for interest, concluding that Beck sought the restoration of property rather than a money judgment. The court subsequently entered an order directing petitioner to disburse the surplus proceeds to Beck without interest.

The trial court later entered substantially identical orders denying petitioner's motions for summary disposition with respect to Dever, Roy, and the Websters. The court also entered orders directing the disbursement of the surplus proceeds to those respondents without interest. The trial court stayed enforcement of its disbursement orders pending appeal. These appeals followed.

## II. ANALYSIS

Petitioner argues that respondents' claims for surplus proceeds accrued when the tax-foreclosure sales occurred in 2014 and therefore became time-barred under the applicable statute of limitations well before the Legislature enacted MCL 211.78t. We agree.

We review de novo the trial court's ruling on a motion for summary disposition. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). Summary disposition may be granted under MCR 2.116(C)(7) if the facts establish that a claim is barred by a statute of limitations. *Grosse Pointe Law Firm, PC v Jaguar Land Rover North America, LLC*, 317 Mich App 395, 399; 894 NW2d 700 (2016). If there is no dispute as to the relevant facts, whether a cause of action is barred by the expiration of a limitations period is a question of law. *Boyle v Gen Motors Corp*, 468 Mich 226, 229-230; 661 NW2d 557 (2003). We also review de novo the interpretation and

-5-

application of statutes and court rules. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

The central issue on appeal concerns when respondents' claims accrued. Petitioner contends that respondents' claims accrued when their properties were sold in 2014. Respondents conversely maintain that their claims accrued only when our Supreme Court decided *Schafer*, because before that decision was issued, they lacked a statutory cause of action under MCL 211.78t. The trial court adopted respondents' view. We disagree and conclude that the trial court erred.

A claim generally accrues "when suit may be brought." *AFSCME v Highland Park Bd of Ed*, 457 Mich 74, 90; 577 NW2d 79 (1998). Under the common law, "a claim generally accrues when all of the elements of the cause of action have occurred and can be alleged in a proper complaint." *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 183 n 8; 931 NW2d 539 (2019). Similarly, under MCL 600.5827, the applicable limitations period generally runs "from the time the claim accrues," meaning "the time the wrong upon which the claim is based was done regardless of the time when damage results." A claim accrues once all elements of the cause of action exist, including the claimant's harm. *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 336; 999 NW2d 423 (2023); *Mays v Governor*, 506 Mich 157, 181-182; 954 NW2d 139 (2020). Accordingly, the focus of the accrual inquiry is not when a particular statutory remedy becomes available. The relevant question is when the underlying injury occurred and the claimant could have pursued relief through an available cause of action.

Respondents' argument rests largely on the premise that their claims did not exist until our Supreme Court held that MCL 211.78t applied retrospectively. But that premise conflicts with the Court's analysis in *Rafaeli* and *Schafer*. In *Rafaeli*, the Court recognized that former property owners possessed "a cognizable, vested property right to collect" surplus proceeds generated by tax-foreclosure sales. *Rafaeli*, 505 Mich at 475-476. The government's retention of those proceeds constituted an unconstitutional taking. *Id*. at 484-485. Thus, rather than creating a new right, the *Rafaeli* Court recognized that former property owners already possessed a vested interest in the surplus proceeds. The constitutional right to just compensation existed at the time the foreclosure sales occurred. The Legislature's subsequent enactment of MCL 211.78t established a statutory mechanism for vindicating that right. It did not create the substantive right itself.

Our Supreme Court confirmed this understanding in *Schafer*. The Court explained that, before the Legislature enacted the 2020 amendments to the GPTA, former property owners could pursue recovery of surplus proceeds through inverse-condemnation claims. *Schafer*, 515 Mich at 41. With the enactment of MCL 211.78t, the Legislature replaced the prior procedures with "a controlling and structured system" for adjudicating such disputes. *Id*. at 44. But the statute did not create the underlying constitutional right to compensation.

Here, respondents' properties were sold in August and September 2014 for amounts exceeding the taxes owed. When petitioner retained the resulting surplus proceeds, respondents were deprived of the compensation to which they were constitutionally entitled. The elements of an inverse-condemnation claim were complete at that time because the government retained property belonging to respondents without just compensation. Accordingly, respondents' claims accrued in 2014. The trial court's conclusion that the claims accrued when *Schafer* was decided

-6-

misapprehends both the nature of the statute and our Supreme Court's decisions. Although *Schafer* clarified the retrospective application of *Rafaeli* and the procedural framework governing such claims, it did not create a new cause of action. Instead, it confirmed that the constitutional right existed all along.

Because respondents' claims accrued in 2014, we must determine whether they were timely asserted in this action. At the time the claims accrued, claims against the State were governed by the limitations provisions applicable to actions in the Court of Claims. See MCL 600.6452; *Schafer*, 515 Mich at 41, 47. Under MCL 600.6452(1), "[e]very claim against this state, cognizable by the court of claims, shall be forever barred unless the claim is filed with the clerk of the court or an action is commenced on the claim in federal court . . . within 3 years after the claim first accrues." Applying that limitations period, respondents were required to bring their inverse-condemnation claims by approximately September 2017. They did not do so.

Neither *Rafaeli* nor the Legislature's enactment of MCL 211.78t revived claims that were already time-barred. Moreover, *Schafer* expressly stated that the statute does not "revive claims that were not subject to pending litigation and were already time-barred before December 22, 2020." *Schafer*, 515 Mich at 50 n 123. Because respondents' claims became time-barred in 2017, well before the Legislature enacted MCL 211.78t in December 2020, they are not entitled to relief.

Respondents nevertheless contend that the six-year limitations period applicable to inverse-condemnation claims against local governmental entities should govern. But respondents' claims were against the State, which acted as the FGU in these proceedings. As the *Schafer* Court explained, claims against the State were governed by the "established limitations and notice provisions applicable to actions in the Court of Claims." *Id*. at 41. Respondents' claims were therefore subject to the three-year limitations period in MCL 600.6452(1).

Respondents also argue that their claims were tolled by the filing of two class actions in 2019. Even assuming that respondents otherwise would qualify as members of the proposed classes, those actions were filed after respondents' claims had already become time-barred. Because class-action tolling begins "on the commencement of an action asserting a class action," MCR 3.501(F)(1), the filing of the class actions could not revive respondents' already-expired claims. See *Cowles v Bank West*, 476 Mich 1, 16-20; 719 NW2d 94 (2006).

Respondents further contend that petitioner lacks standing to challenge their claims because the FGU's role in a proceeding under MCL 211.78t is largely administrative. This is not so. Although the statute assigns the FGU a limited role in the disbursement process, the FGU retains an interest in ensuring that proceeds are disbursed only to claimants entitled to receive them. See *In re Petition of Muskegon Co Treasurer for Foreclosure*, 348 Mich App 678, 688-691; 20 NW3d 337 (2023). Nothing in MCL 211.78t requires an FGU to disburse proceeds on a claim that was already extinguished before the statute was enacted.

Finally, respondents argue that the State should be estopped from asserting a statute-of-limitations defense because the GPTA previously authorized FGUs to retain surplus proceeds. Equitable estoppel requires a representation, admission, or silence that intentionally or negligently induces another party to believe certain facts, followed by justifiable reliance and prejudice. *Van v Zahorik*, 460 Mich 320, 335; 597 NW2d 15 (1999). When invoked to bar a statute-of-limitations

defense, the doctrine applies if the defendant induced the plaintiff to refrain from filing a timely action. *Cincinnati Ins Co v Citizens Ins Co*, 454 Mich 263, 270; 562 NW2d 648 (1997). Respondents have not identified any representation of fact by petitioner that induced them to refrain from pursuing their claims within the applicable limitations period. The enactment and enforcement of the GPTA, without more, does not satisfy the elements of equitable estoppel. Indeed, our Supreme Court explained that the absence of caselaw condemning the retention of surplus proceeds did not mean that the practice was supported by established law and precedent. *Schafer*, 515 Mich at 34 n 79.

Ultimately, because respondents' claims accrued in 2014 and became time-barred in 2017, the trial court erred by denying petitioner's motions for summary disposition under MCR 2.116(C)(7).[2]

Reversed and remanded for entry of summary disposition in favor of petitioner. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Anica Letica
/s/ Stephen L. Borrello

---

[2] Petitioner raises additional issues on direct appeal concerning the interpretation of provisions of MCL 211.78t governing procedural deadlines. Beck raises related arguments concerning petitioner's asserted failure to comply strictly with the statutory procedure and, in his cross-appeal, argues that the trial court erred by denying his request for interest. Because respondents' claims are time-barred, resolution of those issues would have no practical effect on the outcome of these appeals. We therefore decline to address them. See *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018) ("An issue is moot when a subsequent event makes it impossible for this Court to grant relief.").

Respondents additionally argue that petitioner could not properly move for summary disposition in these postjudgment proceedings. Respondents did not preserve that argument, and, in any event, nothing in MCR 2.116 precluded petitioner from seeking summary disposition of the claims respondents asserted in their motions for disbursement.